PHILIP A. DINSKY & another[1] vs. TOWN OF FRAMINGHAM.

Middlesex. April 9, 1982. — July 20, 1982.

Present: WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Negligence,* Municipality. *Municipal Corporations,* Liability for tort, Building inspection. *Massachusetts Tort Claims Act.*

A cause of action alleging negligence in a town's issuance of building and occupancy permits accrued in March, 1978, at the time the plaintiffs began to experience flooding problems, and not at the time the plaintiffs purchased the premises in 1975, and consequently was governed by G. L. c. 258, as appearing in St. 1978, c. 512, § 15, the Massachusetts Tort Claims Act. [802-805]

Discussion of cases decided in jurisdictions outside Massachusetts pertaining to the issue whether a municipality's failure to enforce a building code gives rise to a private cause of action against the municipality. [805-809]

In the absence of a special duty owed to the plaintiffs, different from that owed to the public at large, no cause of action for negligent inspection could be maintained against a town which issued building and occupancy permits despite the fact that certain requirements pertaining to grading and proper drainage of the lot were not met. [809-810]

CIVIL ACTION commenced in the Superior Court Department on March 5, 1980.

The case was heard by *Sullivan,* J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Paul D. Gallese* for the plaintiffs.

*Aaron K. Bikofsky,* Town Counsel, for the defendant.

NOLAN, J. The plaintiffs brought this action against the town of Framingham (town) alleging negligence in the issu-

[1] Terry S. Dinsky.

ance of building and occupancy permits. After a trial in Superior Court, the judge granted the defendant's motion for a directed finding on the ground that the town owed the plaintiffs no duty of care beyond that owed to the public at large. We transferred the plaintiffs' appeal to this court on our own motion. We affirm the judgment for the town.

The judge made the following findings of fact in his memorandum of decision. The plaintiffs are the owners of a single family residence (the premises) on Badger Road in Framingham. By a letter dated February 13, 1974, the town's department of health authorized the town's building commissioner to issue a building permit for the construction of a one-family residence on the premises on the "condition that the lots shall be graded as to prevent low spots that will not drain and create a public nuisance." In addition, the letter provided that "prior to issuance of an occupancy permit, inspection by your Department, or the Town Engineer, or the Board of Health, should be performed to insure compliance with the proposed grading." The building commissioner issued a building permit for the premises on February 15, 1974, and an occupancy permit was issued on December 18, 1975. The permits issued despite the fact that the requirements expressed in the department of health letter pertaining to the proposed grading and proper drainage were not met. On December 22, 1975, the builder conveyed the premises to the plaintiffs.

Beginning in March, 1978, the plaintiffs began experiencing serious flooding on the premises. The basement, garage, and driveway became flooded and large portions of their lawn were covered by water over one inch deep. Shortly afterward, large cracks developed in the foundation walls. The flooding condition has continued during periods of heavy precipitation.

We first consider the threshold question whether G. L. c. 258, as appearing in St. 1978, c. 512, § 15, the Massachusetts Tort Claims Act (Act), applies to this case. The Act applies to causes of action arising on or after August 16, 1977. St. 1978, c. 512, § 16. The judge ruled that the Act

applied to this action. The town argues that it was error for the judge so to rule because the cause of action arose, at the latest, when the plaintiffs purchased the property in 1975. We see no reason why the rules applied to the accrual of a cause of action asserted under G. L. c. 258 should be different from the general rules we apply to the accrual of actions under G. L. c. 260. We find nothing in the Act which shows a legislative intent that different accrual rules apply. It is a well-settled rule that causes of action in tort generally accrue under G. L. c. 260, § 2A, at the time that the plaintiff is injured. *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 741 (1978). We stated the reason behind this rule in *Cannon*: "A negligence action may not be maintained unless one has suffered injury or damage. . . . A cause of action based on negligence requires that both negligence and harm be shown, with a causal connection between these two elements." *Id.* at 742.

We have also held on numerous occasions that when a cause of action in either contract or tort is based on an inherently unknowable wrong, it accrues when the injured person knows or in the exercise of reasonable diligence should know of the facts giving rise to the cause of action. See, e.g., *Franklin* v. *Albert*, 381 Mass. 611, 618-619 (1980); *Nantucket* v. *Beinecke*, 379 Mass. 345, 350 (1979); *Friedman* v. *Jablonski*, 371 Mass. 482, 485 (1976); *Hendrickson* v. *Sears*, 365 Mass. 83, 88-91 (1974). In the case before us, the judge found that the plaintiffs first realized in March, 1978, that their property was improperly graded when they began to experience flooding problems and that until that time the plaintiffs could not have reasonably known that the premises were defectively graded. The judge thus ruled that the cause of action arose in March, 1978. This ruling was correct. Prior to this time, the plaintiffs had suffered no injury due to the town's actions. March, 1978, was the date of their injury as well as the date on which they learned of their injury. The cause of action did not accrue in 1975, when the plaintiffs purchased the premises. At that time they had suffered no damages, were unaware of the grading

problems, and could not have maintained an action in negligence.[2] Therefore, the judge properly ruled that the Act applied to this action.

The judge ruled that, despite the fact that the Act applied to the plaintiffs' action, they were not entitled to recover against the town because the town did not violate a duty owed to them as individuals. In addressing this issue, we start with the basic principle that the abrogation of the doctrine of governmental immunity by the Act simply removed the defense of immunity in certain tort actions against the Commonwealth, municipalities and other governmental subdivisions. It did not create any new theory of liability for a municipality. General Laws c. 258, § 2, provides that: "Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ." We have interpreted this language to mean that actions brought under the Act are governed by the same principles that apply to actions involving private parties. *Beurklian* v. *Allen*, 385 Mass. 1009 (1982). See *Duran* v. *Tucson*, 20 Ariz. App. 22, 24 (1973); *Hoffert* v. *Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220 (1972). In order to recover against the town for negligence, the plaintiffs must show (1) the existence of an act or omission in violation of a (2) duty owed to the plaintiffs by the defendant, (3) injury, and (4) a causal relationship between the breach of duty and the harm suffered. See J.R. Nolan, Tort Law § 171 (1979). The requirement to justify liability that a defendant must owe the plaintiff a duty of care is long established law in Massachusetts. "In order to

---

[2] The defendant argues that the judge's finding that the plaintiffs did not experience flooding difficulties on the premises until March, 1978, was clearly erroneous. We do not decide this issue because the evidence at the trial is not reported. "This question is not open on the record. It must be presumed that there was sufficient evidence to warrant the finding." *Lender* v. *London*, 286 Mass. 45, 47 (1934).

maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled." *Sweeny* v. *Old Colony & Newport R.R.*, 10 Allen 368, 372 (1865). See *Mounsey* v. *Ellard*, 363 Mass. 693 (1973); *Newlin* v. *New England Tel. & Tel. Co.*, 316 Mass. 234, 236 (1944); J.R. Nolan, Tort Law § 172 (1979).

In the present case, the plaintiffs argue that the building commissioner owed a specific, affirmative duty to them to enforce the building code and to issue building and occupancy permits in a nonnegligent manner. The town argues in response that the duty of the building commissioner, absent specific language to the contrary in the building code, is to ensure compliance with the building code for the benefit of the public generally and that the duty does not run to individuals in their private capacity.

The issue of whether a municipality's failure to enforce a building code gives rise to a private cause of action is one of first impression for this court. We shall, therefore, look to the decisions of other jurisdictions which have ruled on this point. We begin with the idea that the purpose of a building code has been considered traditionally to be the protection of the general public. This rule is well stated in 7 E. McQuillin, Municipal Corporations § 24.507, at 479 (3d ed. 1981): "The enactment and enforcement of building codes and ordinances constitute a governmental function. The primary purpose of such codes and ordinances is to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals." The traditional rule, that a building code is enacted for the benefit of the public and therefore that its violation does not give rise to a private right of action, continues to be followed by the majority of the States that have considered the question. In *Hoffert* v. *Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220 (1972), suit was brought

against the city for personal injuries and death of occupants of a motel in which a fire occurred. The plaintiffs' theory was that damage resulted from the city's negligence in issuing a building permit authorizing remodeling of the motel in a manner violative of the city's building code. The Supreme Court of Minnesota affirmed a trial judge's dismissal of the complaint because it did not state a cause of action against the city. The court considered the fact that statutory provisions removing the defense of governmental immunity had been enacted but found that the provisions merely removed the defense of immunity without creating any new liability for a municipality. The court stated that in order to recover, the plaintiffs were required to show a breach of duty owed them in their individual capacities and not merely a breach of some obligation owed to the public, stating: "Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. The charge for building permits is to offset expenses incurred by the city in promoting this public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises." *Id.* at 223.

In *Hannon* v. *Counihan,* 54 Ill. App. 3d 509 (1977), the plaintiffs sought damages against the municipality for the failure of the building inspector to inspect adequately the foundation of the building constructed on the plaintiff's property and to ensure its compliance with the building code. The court held that the complaint did not state a cause of action against the town, stating: "There are no allegations in plaintiffs' complaint suggesting that [the municipality's] building ordinance was enacted for any purpose other than the welfare of the general public nor does it set forth any basis for deviation from the general rule that in

the absence of a special duty owed to plaintiffs, different from that owed to the public at large, no cause of action for negligent inspections can exist." *Id.* at 516.

The Florida court, in *Modlin* v. *Miami Beach*, 201 So. 2d 70 (Fla. 1967), held that the city could not be held liable for personal injury caused by the collapse of a building, assuming that the building inspector had negligently performed an inspection. The rationale of the decision is that the inspection of buildings is performed pursuant to a duty owing to the public generally and not to specific individuals and that therefore a private right of action cannot be founded upon a breach of such a duty. *Duran* v. *Tucson*, 20 Ariz. App. 22 (1973), was an action brought to recover for personal injuries sustained as a result of the city's negligent violation of the fire prevention code. The Arizona court held that the city did not violate a duty owed to the plaintiffs. "The inspections mandated by the fire code are not a service to the owner or occupier of the premises. Absent statutory intention to the contrary, the duty to enforce statutory law is a duty owed to the public generally, the breach of which is not actionable on behalf of the private person suffering damage." *Id.* at 26. The New York courts adhere to the traditional rule that a private right of action against a municipality does not arise absent a showing of a specific duty owed to the plaintiff. The New York court stated in *Tuffley* v. *Syracuse*, 82 App. Div. 2d 110, 114 (N.Y. 1981): "As a general rule no liability attaches for failure to use due care in carrying out general governmental functions such as police or fire protection or the issuance of building permits because the duty of due care is owed to the general public and not to any specific individual . . . ." In *Ascrizzi* v. *Kaufmann*, 57 App. Div. 2d 643, 644 (N.Y. 1977), the appellate court upheld the dismissal of a complaint alleging damages due to the city's negligence in failing to inspect properly the plaintiff's property to determine whether construction was in compliance with the city building code, stating that the city did not owe a duty to the plaintiff beyond that owed to the public generally. For cases reach-

ing a similar result see *154 E. Park Ave. Corp.* v. *Long Beach,* 52 N.Y. 2d 991 (1981); *Motyka* v. *Amsterdam,* 15 N.Y.2d 134 (1965); *Young* v. *Abdella,* 84 App. Div. 2d 890 (N.Y. 1981); *DiPippi* v. *Port Jervis,* 56 App. Div. 2d 589 (N.Y. 1977).

The State of Washington follows the majority rule that a municipal ordinance generally imposes a duty which is owed to the public as a whole rather than to any particular individual. However, in *Halvorson* v. *Dahl,* 89 Wash. 2d 673, 676 (1978), the court applied an exception to the rule, stating that "[l]iability can be founded upon a municipal code if that code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons." The court ruled that the housing code at issue in that case specifically provided that the code was enacted for the benefit of the occupants of the buildings and not just for the general public. See also *Rogers* v. *Toppenish,* 23 Wash. App. 554 (1979).

For other cases that hold that a municipal ordinance creates a duty only to the public at large, and, therefore, provides no basis for an individual's suit for damages for its breach, see *Gerneth* v. *Detroit,* 465 F.2d 784 (6th Cir. 1972), cert. denied, 409 U.S. 1109 (1973); *Leger* v. *Kelley,* 142 Conn. 585 (1955); *Stigler* v. *Chicago,* 48 Ill. 2d 20 (1971); *Brennan* v. *Eugene,* 30 Or. App. 1093 (1977), rev'd on other grounds, 285 Or. 401 (1979).

Although the majority of jurisdictions that have addressed the issue adhere to the traditional public duty rule, two States, Louisiana and Wisconsin, have rejected it, and Alaska has seriously questioned it. In *Stewart* v. *Schmieder,* 386 So. 2d 1351 (La. 1980), the applicable statute required the building inspector to examine detailed plans before issuing a building permit. The court held that the inspector's failure to perform this duty rendered the municipality liable for the injuries which resulted when the building collapsed. The Wisconsin court in *Coffey* v. *Milwaukee,* 74 Wis. 2d 526 (1976), held that a complaint alleging a building inspector's negligence in inspecting standpipes stated a cause of action

against the municipality. The court rejected the traditional distinction between a public duty and a special duty as artificial, but also stated that the court would in certain circumstances decline to enforce a municipality's liability for public policy reasons. See also *Hawes* v. *Germantown Mut. Ins. Co.*, 103 Wis. 2d 524 (1981); *Adams* v. *State*, 555 P.2d 235 (Alaska 1976).

We have examined the State Building Code and G. L. c. 143, §§ 3 and 3A, which impose obligations upon building commissioners. There does not appear to be any language in the enactments which would warrant a finding that the Legislature intended to create private causes of action for property owners on the facts of this case. The enactments confer no specific duties upon building commissioners or inspectors with regard to individual citizens or property owners. General Laws c. 143, § 3A, as amended through St. 1979, c. 617, § 2, describes the responsibilities of a building inspector in this way: "[T]he local inspector shall enforce the state building code as to any building or structure within the city or town from which he is appointed." The State Building Code speaks in terms of a public interest only. The section of the code relating to its purpose is set out below.[3] We conclude that there is nothing in either

---

[3] The purpose section of the State Building Code (1974), applicable at the time the plaintiff's home was constructed provided: "100.3 CODE REMEDIAL: The Basic Code shall be construed to secure its expressed intent which is to insure public safety, health and welfare insofar as they are affected by building construction, through structural strength, adequate egress facilities, sanitary conditions, equipment, light and ventilation and fire safety; and in general, to secure safety to life and property and community from all hazards incident to the design, erection, repair, removal demolition or use and occupancy of buildings, structures and requirements for construction and construction standards of engineering and fire prevention practices and public safety; the adoption of modern technical methods, devices and improvements which may reduce the cost of construction without affecting the health, safety, and security of the occupants or users of buildings; the elimination of restrictive, obsolete, conflicting and unnecessary building regulations and requirements which may increase the cost of construction and maintenance over the life of the building, or retard unnecessarily the use of new materials, or which may provide unwarranted preferential treatment of types of classes of materials,

the General Laws or in the State Building Code which shows a legislative intent to impose liability on a municipality to individual property owners for the negligent issuance of building permits or the nonenforcement of the State Building Code.[4]

After a review of the pertinent legislation and the relevant cases of other jurisdictions, we conclude that we will not depart from the majority rule that in the absence of a special duty owed to the plaintiffs, different from that owed to the public at large, no cause of action for negligent inspection can be maintained. To hold otherwise would cause a municipality to become substantially an insurer of each and every construction project. The tremendous exposure to liability that could result from such a decision would likely dissuade municipalities from enacting regulations designed for the protection and welfare of the public. Accordingly, we affirm the judgment for the defendant.

*Judgment affirmed.*

---

products or methods of construction without affecting the health, safety, and security of the occupants or users of buildings." The present purpose section is abbreviated and provides as follows: "100.4 Code remedial: This code shall be construed to secure its expressed intent which is to insure public safety, health and welfare insofar as they are affected by building construction through structural strength, adequate egress facilities, light and ventilation and fire safety; and, in general, to secure safety to life and property." 780 Code Mass. Regs. 100.4 (1980).

[4] Contrast G. L. c. 269, § 8, which expressly imposes liability on a municipality for damage to private property caused by a riotous or tumultuous assembly. See *Abraham* v. *Woburn*, 383 Mass. 724 (1981).