Arthur K. WHITCOMB, et al.,
Plaintiffs, Appellants,

v.

PENSION DEVELOPMENT CO., INC.,
et al., Defendants, Appellees.

No. 86–1232.

United States Court of Appeals,
First Circuit.

Submitted Sept. 12, 1986.

Decided Dec. 31, 1986.

**168**

Edward O. Proctor, Jr. and Gaston Snow & Ely Bartlett, Boston, Mass., on brief, for plaintiffs, appellants.

D. Alice Olsen, James J. Moran, Jr. and Morrison, Mahoney & Miller, Boston, Mass., on brief, for defendants, appellees Pension Development Co., Inc. and Spurgeon S. Steeves.

Richard A. Freedman and Brody & Feinberg, Boston, Mass., on brief, for defendant, appellee Provident Life and Acc. Ins. Co.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiffs Arthur Whitcomb, Lena Whitcomb, and Arthur Whitcomb, Inc. appeal from a judgment granting summary judgment in favor of defendants Pension Development Co., Inc. ("Pension"), Provident Life and Accident Insurance Co. ("Provident"), and Spurgeon S. Steeves ("Steeves"). The district court held that plaintiffs' diversity action was barred by

the applicable Massachusetts state statutes of limitations. We affirm.

In 1974, Arthur Whitcomb and other officers of Whitcomb, Inc. met with Steeves, the principal officer and shareholder of Pension, to discuss adoption of a proposed plan of group life insurance for Whitcomb, Inc. The plan included a term life insurance policy on the life of Arthur Whitcomb. Steeves allegedly represented that, under the Internal Revenue Code, the premiums for the life insurance policy on the life of Arthur Whitcomb would be deductible by Whitcomb, Inc., and would not be includible as income to Arthur Whitcomb or to Arthur's wife, Lena. Whitcomb, Inc. adopted the plan in November, 1974, and Provident issued the group policy. At that time, Whitcomb, Inc. surrendered another life insurance policy it had on the life of Arthur Whitcomb.

When Whitcomb, Inc. filed federal tax returns for 1974 and 1975, it claimed as deductions the premiums it had paid both years for Arthur Whitcomb's life insurance policy issued by Provident. When Arthur and Lena Whitcomb filed their joint federal tax returns for 1974 and 1975, they did not include as income the premiums Whitcomb, Inc. had paid for Arthur Whitcomb's life insurance policy.

The 1974 and 1975 tax returns filed by Whitcomb, Inc. and Arthur and Lena Whitcomb were audited by the Internal Revenue Service (IRS). In separate letters dated October 17, 1977, the IRS sent to Whitcomb, Inc. and to Arthur and Lena Whitcomb copies of examination reports concerning proposed adjustments in plaintiffs' tax liabilities. Specifically, the IRS notified Whitcomb, Inc. that it had disallowed the deductions Whitcomb, Inc. had claimed for the premiums it had paid on Arthur Whitcomb's life insurance policy. The IRS notified Arthur and Lena Whitcomb that the life insurance premiums that had been paid by Whitcomb, Inc. constituted additional income to Arthur and Lena, and that additional taxes were due.

Plaintiffs enlisted the accounting firm of Arthur Andersen & Co. to prepare protests

in response to the IRS letters, which preparation began in October, 1977. In December, 1977, Arthur Andersen & Co. submitted written protests to the IRS on behalf of plaintiffs. On December 14, 1978, the IRS issued notices of deficiency to plaintiffs informing them of the additional amounts of tax owed for the years 1974 and 1975. On March 13, 1979, counsel filed petitions in the U.S. Tax Court on behalf of Whitcomb, Inc. and Arthur and Lena Whitcomb.

In June, 1980, plaintiffs' counsel wrote to Provident and Steeves inviting them to participate in the Tax Court contest of the IRS determinations, and stating that if plaintiffs were unsuccessful in that contest, they would pursue their legal rights against Steeves, Pension and Provident. The Tax Court subsequently upheld the determinations of the IRS as to both Whitcomb, Inc. and Arthur and Lena Whitcomb. Counsel filed an appeal with this court solely on behalf of Whitcomb, Inc. This court affirmed the judgment of the Tax Court as to Whitcomb, Inc. on May 10, 1984.

On March 23, 1984, plaintiffs filed a diversity action against defendants, contending that defendants were liable for damages which resulted when the IRS determined that the plan of group life insurance adopted by Whitcomb, Inc. did not qualify under a provision of the Internal Revenue Code, and that plaintiffs therefore owed additional taxes. The district court granted summary judgment in favor of defendants.

## STATUTES OF LIMITATIONS

In their complaint and amended complaint, plaintiffs asserted causes of action based on tort, breach of contract, and Mass.Gen.Laws Ann. ch. 93A (the Massachusetts Consumer Protection Act). Plaintiffs' tort claims are governed by Mass. Gen.Laws Ann. ch. 260, § 2A, which provides that tort claims must be filed within three years from the time the cause of action accrued. Under Mass.Gen.Laws Ann. ch. 260, § 2, plaintiffs' contract claims had to be filed within six years from the time their cause of action accrued. Plaintiffs' claims under Mass.Gen.Laws Ann. ch. 93A had to be brought within four years. Mass.Gen.Laws Ann. ch. 260, § 5A. The district court held that plaintiffs' claims accrued at the latest in 1977. Because plaintiffs did not file their diversity action against defendants until 1984, the district court held that all of their claims were time-barred.

Plaintiffs argue that the district court erroneously determined that their claims were time-barred. They disagree with the district court's assessment of when their claims accrued.

The Supreme Judicial Court of Massachusetts has held that a cause of action accrues when a plaintiff knows or reasonably should know of the harm caused by defendant's conduct. *Franklin v. Albert*, 381 Mass. 611, 619, 411 N.E.2d 458, 463 (1980); *see Levin v. Berley*, 728 F.2d 551, 556 (1st Cir.1984) (holding that plaintiff's claim under Mass.Gen.Laws Ann. ch. 93A was not barred by the statute of limitations, citing *Franklin*). In addition, under Massachusetts law, a cause of action in tort generally accrues at the time the plaintiff is injured. *Dinsky v. Framingham*, 386 Mass. 801, 803, 438 N.E.2d 51, 52 (1982). A cause of action for breach of contract generally accrues at the time of breach, even if the amount of damages may be unknown or if damages might not be sustained until later. *See Campanella & Cardi Construction Co. v. Commonwealth*, 351 Mass. 184, 185, 217 N.E.2d 925, 926 (1966); *DiGregorio v. Commonwealth*, 10 Mass.App.Ct. 861, 862, 407 N.E.2d 1323, 1324 (1980) (rescript). Massachusetts courts also hold, however, that when a cause of action in either tort or contract is based on an inherently unknowable wrong, the cause of action accrues when the injured party knows or in the exercise of reasonable diligence should know the facts giving rise to the cause of action. *Dinsky*, 386 Mass. at 803, 438 N.E.2d at 52; *Frank Cooke, Inc. v. Hurwitz*, 10 Mass.App.Ct. 99, 106, 406 N.E.2d 678, 683 (1980).

■ Even assuming, *arguendo*, that defendants' alleged wrongful actions were at

some point inherently unknowable to plaintiffs, we agree with the district court that plaintiffs knew or reasonably should have known the facts giving rise to their cause of action at least in 1977 after receiving the IRS letters in October, 1977, and after having to enlist Arthur Andersen & Co. at that time to prepare the written protests on their behalf. The October, 1977, IRS letters to plaintiffs certainly put plaintiffs on notice that the IRS was contesting Whitcomb, Inc.'s claimed deductions for the life insurance policy, and Arthur and Lena Whitcomb's failure to include as income the premiums Whitcomb, Inc. had paid. The IRS letters were sent to plaintiffs over six years prior to the date plaintiffs filed their suit against defendants.

Plaintiffs nevertheless argue that the nature or extent of their injuries was not known and should not have been known (and hence, their cause of action did not accrue) until they received the notices of deficiency from the IRS in 1978, or until their counsel wrote to Provident and Steeves in June, 1980, advising them that plaintiffs would pursue their legal rights against defendants if plaintiffs' Tax Court litigation was unsuccessful. Alternatively, plaintiffs contend that their cause of action did not accrue until, in Arthur and Lena Whitcomb's case, the adverse Tax Court decision in 1983, and, in Whitcomb, Inc.'s case, until the 1984 adverse decision by this court in Whitcomb, Inc.'s appeal of the Tax Court decision.

We reject plaintiffs' contentions. Although the 1978 IRS notices of deficiency clearly indicated that deficiencies had been imposed against plaintiffs, the IRS alerted plaintiffs as early as October, 1977, that it was challenging their position regarding the tax consequences of the group life insurance policy. After receiving the October, 1977, IRS letters, plaintiffs promptly enlisted Arthur Andersen & Co. to file with the IRS written protests on their behalf.

At that point, plaintiffs knew or reasonably should have known of the harm caused by defendants' conduct, and the facts giving rise to their cause of action. Whatever the technical differences between the 1977 IRS letters and the 1978 IRS deficiency notices, the distinctions are insufficient to support plaintiffs' contention that they did not know and could not have known the source of their injuries until they received the 1978 notices of deficiency.[1]

We also note that even assuming, *arguendo*, that Arthur and Lena Whitcomb could not have known the total extent of their injuries until the Tax Court decision, and that Whitcomb, Inc. could not have known the extent of its injuries until our decision in its appeal of the Tax Court decision, the Supreme Judicial Court of Massachusetts has rejected the notion that knowledge of the extent of an injury should control accrual of a cause of action for statute of limitations purposes. *See Olsen v. Bell Telephone Laboratories, Inc.*, 388 Mass. 171, 175, 445 N.E.2d 609, 612 (1983). We recently applied this principle in *Levin v. Berley, supra*. In *Levin*, an attorney had drafted the will of plaintiff's deceased wife with instructions to take advantage of the marital deduction in the federal estate tax law. Plaintiff, who was executor of his wife's will, subsequently filed a federal estate tax return claiming a marital deduction. The IRS contacted plaintiff "questioning" the amount of the marital deduction and later sent plaintiff a notice of deficiency after disallowing the marital deduction. After unsuccessfully pursuing proceedings in Tax Court and in this court, plaintiff sued the attorney alleging, *inter alia*, that the attorney had committed malpractice. In affirming the district court's determination that plaintiff's malpractice claim was time-barred, we noted that under Massachusetts law, the fact that the extent of plaintiff's damages was

---

1. Nor do we agree with plaintiffs' alternative contention that their cause of action did not accrue until their attorney wrote to Provident and Steeves in 1980. Prior to that time, plaintiffs had received copies of the IRS examination reports and the notices of deficiency. Thus, plaintiffs were aware of the IRS' challenge to their position regarding the tax consequences of the insurance plan prior to 1980.

uncertain prior to final judicial resolution of the tax deficiency did not delay accrual of plaintiff's cause of action against the attorney. We held that plaintiff's "cause of action accrued, at the latest, when he was put to appreciable expense in order to justify the marital deduction." *Levin*, 728 F.2d at 555.

As the district court noted in this case, plaintiffs were put to appreciable expense as early as October, 1977, when they had to hire Arthur Andersen & Co. to prepare the written protests in response to the October, 1977, IRS letters.[2] Although plaintiffs in this case, like the plaintiff in *Levin*, may not have known the total extent of their damages prior to judicial resolution of the tax consequences of the insurance plan, that did not delay their cause of action from accruing. *See Levin*, 728 F.2d at 554–555; *Olsen*, 388 Mass. at 175, 445 N.E.2d at 612.

Although plaintiffs attempt to distinguish *Levin*, we find their arguments unpersuasive. Citing to our comment in *Lev-in* that the error allegedly committed by the attorney was "plain," plaintiffs construe that as a holding that conduct by a defendant which was not a "blunder" or "plain error" would not necessarily constitute notice of the source of a plaintiff's injury. Plaintiffs contend that because defendants' error in this case was not "plain," plaintiffs could not have known the source of their injury until after 1977.

Plaintiffs read more into our statement in *Levin* than is warranted. That statement was made in the context of determining, under the facts of that case, when plaintiff suffered injury for purposes of ascertaining when his cause of action accrued. Under the facts of this case, plaintiffs suffered appreciable harm when they were put to the expense of hiring Arthur Andersen & Co. in 1977 for purposes of preparing the written protests in response to the October, 1977, IRS letters.[3] Thus, we agree with the district court that plaintiffs' cause of action accrued at the latest

---

**2.** Although Arthur and Lena Whitcomb dispute that they suffered any harm before they commenced this action against defendants, the record indicates otherwise. In answers to interrogatories Arthur Whitcomb acknowledged retaining Arthur Andersen & Co. in October, 1977, to prepare the tax protest with the IRS on Arthur and Lena's behalf. Arthur Whitcomb's answers to interrogatories also indicated that he claimed as part of the damages incurred the fees charged by Arthur Andersen & Co. for its preparation of the protest prepared on Arthur and Lena's behalf in 1977.

**3.** In *Levin*, this court also noted that the analysis used in determining when plaintiff's cause of action accrued "might possibly" have been different had the attorney whom plaintiff sued for malpractice represented plaintiff in connection with the IRS assessment of the tax deficiency. *Levin*, 728 F.2d at 554. This statement was made in light of authority holding that an attorney malpractice cause of action accrues only when the attorney-client relationship ends. 728 F.2d at 551. In this case, while plaintiffs acknowledge that the relationship between them and defendants was not that of an attorney-client, plaintiffs argue that there was a "community of interest" between them and defendants in their attempt to qualify the life insurance plan with the IRS. Citing only the above discussion in *Levin*, plaintiffs propose that we apply a rule which says that while two parties are pursuing the same objective, the law does not require initiation of a lawsuit between them until they finally fail to achieve their common objectives. However, we do not believe that our brief discussion in *Levin* of the attorney-client relationship supports the type of rule advanced by plaintiffs in this case.

We also reject plaintiffs' argument that in *Levin*, this court did not hold that plaintiff's receipt of an IRS examination report was the event that triggered plaintiff's knowledge of his injury for purposes of determining when his cause of action accrued. There is no discussion in *Levin* of an IRS examination report of the type that plaintiffs received in this case; rather, the facts in *Levin* indicated merely that the IRS "contacted" plaintiff "questioning" the amount of the deduction he had claimed in the tax return. In addition, even assuming, *arguendo*, that the IRS contact with plaintiff in *Levin* was in the form of an examination report, we did not expressly hold that receipt of an IRS examination report was insufficient to trigger plaintiff's knowledge of his injury; rather, we simply determined that under the facts of that case, plaintiff knew or should have known of the attorney's mistake *by at least* the time when plaintiff's counsel sent the attorney a letter regarding plaintiff's intent to hold the attorney responsible for alleged errors made in plaintiff's wife's will.

in 1977, thereby rendering their claims time-barred.

## EQUITABLE ESTOPPEL

Plaintiffs contend that summary judgment was inappropriate because there are factual issues concerning whether defendants are estopped from raising the defense of the statute of limitations. We disagree.

Under Massachusetts law, a claim of estoppel requires proof that defendants made representations they knew or should have known would induce plaintiffs to delay bringing suit, and that plaintiffs in fact delayed filing suit in reliance on the representations. *White v. Peabody Construction Co., Inc.*, 386 Mass. 121, 134, 434 N.E.2d 1015, 1023 (1982). To support their estoppel claim, plaintiffs cite to several alleged representations made orally and in letters from 1974 through 1980 by persons from Pension and Provident expressing their view that the group life insurance plan qualified under the Internal Revenue Code. Plaintiffs also cite to an affidavit by James Wirths, former comptroller for Whitcomb, Inc., in which he stated that at the time he had directed a partner at Arthur Andersen & Co. to proceed before the IRS, he had relied on representations by Steeves that the insurance plan would qualify. Wirths further averred that after the IRS issued the notices of deficiency, Whitcomb, Inc. had relied on Steeves' representation that the plan would qualify when it retained a law firm to petition the Tax Court for review of the IRS decision.

■ Even assuming, *arguendo*, that Wirths' affidavit complied with the requirements of Fed.R.Civ.P. 56(e) and may therefore properly be considered, neither it nor the other materials upon which plaintiffs rely are sufficient to raise a genuine issue of material fact on the issue of estoppel. Steeves' statements in 1974 that the plan qualified were made prior to the time the plan was adopted and prior to the time the IRS indicated its position as to whether the plan would qualify. Thus, they cannot reasonably be said to have induced plaintiffs not to sue defendants. The other statements upon which plaintiffs rely were made after the IRS notified plaintiffs that it was challenging their position on whether the plan qualified. Thus, plaintiffs were aware of the IRS' position at the times defendants allegedly reaffirmed their view that the plan did qualify. In light of plaintiffs' knowledge of the IRS' challenge, we cannot accept plaintiffs' argument that their alleged reliance on defendants' statements was justified.[4] Under these circumstances, we agree with the district court that the alleged representations by defendants could not reasonably have induced plaintiffs to delay filing suit against defendants and therefore did not give rise to an estoppel. *See White*, 386 Mass. at 135, 434 N.E.2d at 1023 (estoppel claim rejected where representation by defendant could not reasonably have induced plaintiff to delay bringing suit); *cf. New England Power Co. v. Riley Stoker Corp.*, 20 Mass. App.Ct. 25, 32–33, 477 N.E.2d 1054, 1059–60 (1985) (defendant's statements that it " 'has in the past and will in the future stand behind all of its warranties,' " and that " '[s]hould there be design deficiencies, [defendant] ... corrects them without further cost to the customer' " did not give rise to an estoppel). Because plaintiffs failed to raise a genuine issue of material fact regarding estoppel, the district court was not precluded from granting summary judgment. *Cf. New England Power Co., supra,* (representations by defendant did not give rise to an estoppel; summary judgment in favor of defendant affirmed).

Plaintiffs also contend that there was fraudulent concealment on the part of defendants. On the record before us, however, we conclude that plaintiffs have failed to raise a genuine issue of material fact with regard to the issue of fraudulent

---

4. Plaintiffs argue that there was a close relationship and community of interest between them and defendants which lulled plaintiffs into delaying filing suit against defendants. However, the incidents plaintiffs cite fail to indicate that the relationship between plaintiffs and defendants was such that defendants could reasonably be held to be estopped from raising the defense of the statute of limitations.

concealment that would preclude a grant of summary judgment.

We have considered plaintiffs' other arguments on appeal and find them without merit.

*The judgment of the district court is affirmed.*