## CIRCUIT COURT OF LANCASTER COUNTY

Thomas E. Stevens,
t/a Capt'n Tom's Seafood

v.

Commonwealth of Virginia

April 26, 1991

By JUDGE JOSEPH E. SPRUILL, JR.

In this proceeding, the plaintiff seeks recovery from the Commonwealth of Virginia under the Virginia Tort Claims Act (VTCA) (Section 8.01-195.1 *et seq.*) for negligence of a state employee. The Commonwealth claims that (1) this action is barred by the doctrine of sovereign immunity and (2) the notice given by the plaintiff was not sufficient under the VTCA.

In making these initial determinations, we assume the truth of the allegations of the Motion for Judgment.

The plaintiff, Thomas E. Stevens, also known as "Capt. Tom," undertook to establish a crab picking business in Lancaster County in 1988. He contacted Richard Marsh, local manager of the Division of Shellfish Sanitation of the Commonwealth of Virginia, to obtain the license required before he could begin operations. Marsh informed Capt. Tom that a 40 h.p. boiler would have to be installed before a license could be issued. Capt. Tom, although having only an eighth grade education, felt this demand was unreasonable and far in excess of what was needed for this operation. He tried vainly to have this demand

reconsidered. The bureaucracy was unyielding. Faced with the choice of abandoning his enterprise or complying with Marsh's mandate, Capt. Tom installed what his counsel refers to as a "monster boiler."

It develops that Capt. Tom was right; all that was needed was a 4 or 5 h.p. boiler. Nothing in the rules, regulations or guidelines of the Division of Shellfish Sanitation required what Marsh had insisted upon. The fact that Capt. Tom now has a boiler the capacity of which is unrivalled among other crab picking houses in the region is of little consolation to him because he has been required to expend $40,000.00 unnecessarily. This sum (or $25,000.00 thereof) he seeks to recover in this action.

### Sovereign Immunity

The VTCA provides that the Commonwealth may be liable for the negligence of its employees only "under circumstances where the Commonwealth, *if a private person*, would be liable to the claimant . . . ." (Emphasis added.) The Commonwealth argues that since "private" persons do not issue licenses on behalf of the Commonwealth, there is no comparable function in the private sector and thus the limiting language of the VTCA renders the Act inapplicable to this claim.

Because this limiting language has not been interpreted by the Supreme Court of Virginia, the Commonwealth cites a number of cases from other jurisdictions in support of its position. In *Shelton v. Industrial Commission*, 367 N.E.2d 51 (Ohio 1976), a state worker negligently inspected a boiler which later exploded injuring the plaintiff. Here, sovereign immunity was successfully invoked. In *Trianon Park Condominium v. City of Hialeah*, 468 So. 2d 912 (Fla. 1985), a building inspector was negligent in inspecting a condominium under construction. The condominium owners' suit against the city was barred by sovereign immunity.

Each of these cases involved the negligent performance of governmental functions which would not normally be performed by private persons. However, these decisions do not rely solely upon this circumstance for their results. In each, the court held that private parties are not liable for injuries to another based on negligence *unless they*

*have breached a duty owed* to that person. In these cases, no duty was found. The courts here were careful not to create new duties owed by the government to the public at large or to impose upon taxpayers obligations as insurers in all circumstances where governmental activity, such as building inspection, is somehow involved.

The plaintiff refutes the Commonwealth's argument on this point with *Prescott v. United States*, 533 F. Supp. 918 (D. Nev. 1981). Prescott involved an employee who contracted multiple myeloma from exposure to radiation at a nuclear test site. The court here noted that private persons do not detonate nuclear devices, maintain armies, or operate postal services. "Yet, there are analogous private activities in the scope of which certain negligent acts would give rise to private liability," 533 F. Supp. at p. 929. The test, identified in *Prescott*, is "whether a private person would be responsible for similar negligence."

If Capt. Tom had installed this "monster boiler" at the direction of an engineer engaged by him, rather than pursuant to the directive of Marsh, under these same circumstances, the engineer would have been exposed to liability. To say that the Commonwealth could absolve itself of responsibility simply because a private person could not issue the license its agent issued is, to me, illogical. Marsh's negligence, if any, was in failing, for whatever reason, to follow "the book" in advising Capt. Tom. A private person, engaged by Capt. Tom for the same purpose, who acted precisely as Marsh did, would be responsible for similar negligence. This is the rationale of *Prescott*, and it is both logical and convincing.

The Commonwealth next argues that the plaintiff was not owed a legal duty in this case. It argues that government inspectors who are empowered to inspect and license businesses for the purpose of protecting the public health do not owe a legal duty to every member of the public or to every person or business that is inspected. *See, Willow Tree Learning Center, Inc. v. Prince George's County, Maryland*, 584 A.2d 157 (Maryland 1991), and *Dinsky v. Town of Framingham*, 438 N.E.2d 51 (Mass. 1982). Each of these cases involved faulty inspections. In each, sovereign immunity was successfully invoked. In each, the rationale of the decisions was that building codes and

safety inspections are enacted for the benefit of the public generally, and a violation or the negligent enforcement of such does not give rise to private rights of action. In such cases, no duties are owed to particular individuals.

The Commonwealth is concerned that if liability is imposed in this case, the Commonwealth's entire regulatory scheme could be destroyed by having every regulatory decision subjected to second guessing by courts and juries. Thus, suggests the Commonwealth, if businesses can sue to challenge the many decisions made by the Commonwealth's inspectors, then any member of the public who allegedly ate a contaminated substance could sue the Commonwealth because a state inspector negligently allowed the food product to be sold.

Capt. Tom's claim does not, in my view, pose such an awesome threat to the Commonwealth. He was dealing one-on-one with Marsh. In order to operate, Capt. Tom needed a license. To get a license, he was captive to Marsh's directives. Marsh was an agent of the Commonwealth of Virginia. He is alleged to have dramatically exceeded the mandates of his own agency in formulating requirements imposed on Capt. Tom. Capt. Tom was not just a member of the general public. He was the direct and specific target of this ill-advised governmental action.

To adopt the Commonwealth's argument here is to say that its employees can negligently disregard the rules, regulations and guidelines of the various agencies of the Commonwealth with impunity and, in so doing, inflict untold mischief upon suspecting and unsuspecting citizens who routinely find themselves at the mercy of such employees. We could not countenance such a result.

Here, the Commonwealth vested Marsh with authority to issue licenses to crab pickers and to interpret and communicate its licensing requirements to prospective licensees. To be sure, these officials have an affirmative obligation to applicants for licenses to perform these tasks in a non-negligent manner.

The Commonwealth next contends that if Capt. Tom felt aggrieved by the requirements imposed by Marsh, his remedy was to resort to the Administrative Process Act (Virginia Code § 9-6.14:1). However, his failure to avail himself of this remedy does not require that he be denied the opportunity to proceed under the VTCA. The Administra-

tive Process Act is, I believe, supplemental to, and not in lieu of, other remedies.

## Notice

Finally, the Commonwealth argues that the notice filed by Capt. Tom under the VTCA was defective. Virginia Code § 8.01-195.6 provides that claims against the Commonwealth shall be barred unless the claimant files a Notice of Claim within one year after the cause of action accrued. The notice must state the time and place at which the injury is alleged to have occurred. Because the VTCA is in derogation of the immunity of the sovereign, the act must be strictly construed. The Commonwealth complains that in this case, the plaintiff's Notice of Claim does not set forth the time at which the injury is alleged to have occurred.

Capt. Tom is unable to be more precise than to allege that the directives from Marsh were delivered "in the late spring and early summer of 1988." Capt. Tom is apparently not an accomplished practitioner of the art of record keeping. Nonetheless, his counsel on December 5, 1988, first notified the Attorney General by letter of the claim against the Commonwealth "arising out of the negligent or wrongful actions of Richard Marsh of the Virginia Division of Shellfish Sanitation." On March 30, 1989, another notice was sent to the Attorney General repeating the information contained in the prior notice, setting forth specifically the name of the complainant, the exact nature of the claim, and the name of the person and agency alleged to be guilty of the wrongful conduct. The second notice set forth that the actions complained of occurred in "late spring or early summer of 1988."

The purpose of the notice requirement is to alert the Commonwealth to the claim and its particulars. We find these notices sufficient. They were posted within one year of "late spring." To allow a failure to allege a precise date to negate a notice under these circumstances would be an unreasonable and strained construction of the notice requirement.

For the foregoing reasons, the pleas of sovereign immunity and failure of notice will be overruled.