DANIEL MORAIS & others[1] *vs.* CITY OF LOWELL.

No. 98-P-938.

Middlesex. January 19, 2000. - December 1, 2000.

Present: JACOBS, GILLERMAN, & GELINAS, JJ.

*Practice, Civil,* Motion to dismiss. *Massachusetts Tort Claims Act. Negligence,* Municipality. *Municipal Corporations,* Building inspection. *Notice.*

In an action brought under the Massachusetts Tort Claims Act, G. L. c. 258, by property owners alleging the city building inspector wrongfully entered the owners' apartment building, declared it unsafe, and ordered the tenants to vacate without prior notice, as a result of which the owners suffered damages, the judge incorrectly allowed the city's motion to dismiss for failure to state a claim upon which relief could be granted, where, under G. L. c. 143, § 6, and G. L. c. 139, §§ 1 & 3, the city had a special duty to the building's owners to provide notice and an opportunity to make the property safe before ordering the building vacated. [541-544]

CIVIL ACTION commenced in the Superior Court Department on April 3, 1997.

A motion to dismiss was heard by *Charles T. Spurlock,* J.

*Brian J. Sullivan* for the plaintiffs.

*Marie Sheehy* for the defendant.

JACOBS, J. The plaintiffs, owners of a six-unit apartment building in Lowell (city), filed a complaint in the Superior Court seeking damages from the city under the Massachusetts Tort Claims Act, G. L. c. 258. We agree with the plaintiffs' contention on appeal that the city's motion to dismiss their complaint, for failure to state a claim upon which relief can be granted, filed pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), was wrongly allowed.

In their complaint, the plaintiffs allege that on the morning of

---

[1] Lucia Morais and Manuel Ferreira.

April 6, 1994, a building inspector,[2] accompanied by officers of the Lowell police department, "without legal justification[,] wrongfully and or negligently" entered their building and ordered all the tenants to vacate immediately. Five units were vacated that day, and the sixth unit was vacated on the following day. Gas and electric meters were removed, and the building was boarded up. The plaintiffs further allege that they were given no notice of any violation of law or of any complaint against any occupants of the building prior to a telephone call made to the home of two of the plaintiffs as the building was being vacated. On April 22, 1994, the plaintiffs received a certified letter, dated April 19, 1994, from the city's department of inspectional services, signed by the same building inspector who entered the building on April 6, informing them of the results of a "recent inspection." It stated that the building was "open and abandoned and dangerous and unsafe," that it appeared the owners permitted the building to be used for illegal purposes, in violation of G. L. c. 139, § 20, and that the building "has also been secured by the Building Department."[3]

In reviewing the disposition of a motion to dismiss under rule 12(b)(6), we take the allegations in the complaint and inferences drawn therefrom in a plaintiff's favor as true, and consider the complaint sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). We, therefore, examine whether the plaintiffs' allegation that the entry into their building was wrongful and negligent, constitutes a claim under G. L. c. 258.

General Laws c. 258, § 2, as amended by St. 1984, c. 279, § 1, provides that: "Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in

---

[2]After this appeal was filed, the parties stipulated to the dismissal of the action against the building inspector, leaving only the plaintiffs' claims against the city.

[3]No issue of presentment, G. L. c. 258, § 4, was raised below or has been argued in this appeal. The plaintiffs' complaint contains a general averment that it was "filed in accordance with the provisions of Chapter 258." Accordingly, that issue is not before us. See *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 55-56 & n.5 (1982).

the same manner and to the same extent as a private individual under like circumstances . . . ." In interpreting this statute, the Supreme Judicial Court has stated that "actions brought under the [Massachusetts Tort Claims] Act are governed by the same principles that apply to actions involving private parties. In order to recover against the [city] for negligence, the plaintiffs must show (1) the existence of an act or omission in violation of a (2) duty owed to the plaintiffs by the defendant, (3) injury, and (4) a causal relationship between the breach of duty and the harm suffered." *Dinsky* v. *Framingham*, 386 Mass. 801, 804 (1982) (citations omitted). In that case the court held that, "in the absence of a special duty owed to the plaintiffs, different from that owed to the public at large, no cause of action for negligent inspection can be maintained." *Id.* at 810.

The issue, therefore, is whether the plaintiffs' complaint may be read as alleging violation of a special duty owed to them. The essence of their complaint is that they were entitled to prior notice by the city before it ordered their building vacated. We first determine whether the city had a duty to provide such notice. The authority of a building inspector to determine whether a building is unsafe is subject to "statutory safeguards against its unreasonable exercise, designed to satisfy the requirements of due process." *DiMaggio* v. *Mystic Bldg. Wrecking Co.*, 340 Mass. 686, 692 (1960) (examining whether owner was afforded due notice of an order by Boston building commissioner to demolish his building pursuant to a municipal building code then in effect, similar to G. L. c. 143). General Laws c. 143, § 6, prescribes the duties of a local inspector upon being informed that a building is dangerous, and G. L. c. 139, §§ 1 & 3, provide for actions by a city to abate building-related nuisances.[4] Both statutes provide for notice to an owner and an opportunity to make the property safe, or to eliminate the nuisance.[5]

On the pleadings, this case is not one in which a plaintiff

---

[4]The April 19, 1994, letter of the building inspector cites two grounds in apparent justification of the entry. The first, by declaring the building "open and abandoned and dangerous and unsafe," appears to be based on G. L. c. 143, § 6, and the second is stated as G. L. c. 139, § 20.

[5]General Laws, c. 143, § 6, as amended through St. 1957, c. 214, § 1, states that the local inspector, "immediately upon being informed by report or otherwise that a building . . . is dangerous to life or limb or that any building . . . is unused, uninhabited or abandoned, and open to the weather, shall inspect the same; and he shall forthwith in writing notify the owner . . . to

"has been harmed directly by the wrongful conduct of a third person where a public employee may have failed in his duty to enforce the law and thereby to interrupt or prevent that third person's harmful activity. The [city's] alleged negligence is based on its breach of a duty [to give the plaintiffs notice due them]." *Mamulski* v. *Easthampton,* 410 Mass. 28, 29 (1991) (citations omitted). We conclude that the duty created by the notice requirements of c. 139 and c. 143 is a special duty running directly to the plaintiffs in this case, "different from that owed to the public at large." *Dinsky* v. *Framingham, supra* at 810. The failure to perform that duty deprived the plaintiffs of the opportunity — provided by statute — to make the building safe. It is for that reason the special duty of notice is a necessary prerequisite to the performance of the city's duty to the general public. We agree with the observation of a leading commentator that "the analytical framework used in *Dinsky,* based on the four traditional elements of a common law tort action, implies that [a] court could conclude that compensable claims arise even in cases where the public employee's conduct has no private equivalent. For example, public demolition statutes in Massachusetts require the local building department to notify the owner before a building is demolished as a public danger. The court could hold, consistent with *Dinsky,* that this requirement creates a special duty to the owner, for violation of which the municipality would be liable under the Tort Claims Act." Glannon, The Scope of Public Liability Under the Tort Claims Act: Beyond the Public Duty Rule, 67 Mass. L. Rev. 159, 160 (1982) (footnote omitted).

Accepting, as we must, the plaintiffs' allegation that they had no prior notice of the city's impending action, and because none of the statutory procedural requirements appears to have been followed, we conclude that the plaintiffs have stated a

remove it or make it safe if it appears to him to be dangerous, or to make it secure if it is unused, uninhabited or abandoned and open to the weather."

General Laws, c. 139, § 20, as amended through St. 1985, c. 421, § 4, provides that one who knowingly permits premises owned by him to be used for certain illegal purposes, "or after due notice of any such use omits to take all reasonable measures to eject therefrom the persons occupying the same as soon as it can lawfully be done, shall be punished . . . ."

Both statutes provide, after additional notice and process, for removal of such buildings by a city or town where the building is adjudged a nuisance, see G. L. c. 139, §§ 1 & 3, or where the owner fails to remove a structure or to make it safe, see G. L. c. 143, §§ 7, 8, & 9.

claim of a breach of duty by the city cognizable under c. 258. The plaintiffs' allegation that they suffered lost rents is a sufficient pleading of damages from the failure to provide notice to support their negligence claim under c. 258. We intimate no opinion on the viability of the plaintiffs' claims of emotional injury and damage caused by unknown third parties who vandalized their vacant building.[6] We also do not address whether an immediate danger to public safety may excuse the obligation to give notice.

It was error to allow the city's motion to dismiss the plaintiffs' complaint for failure to state a claim. The order allowing the motion is vacated, and the complaint is to be reinstated for further proceedings in the Superior Court.

*So ordered.*

---

[6]To the extent the plaintiffs' complaint sounds in negligence for failure to provide notice, the city's observation that G. L. c. 258, § 10(*c*), excludes intentional torts as the basis for governmental liability is inapposite. Also, the city's conclusory references to the exceptions to liability set forth in §§ 10(*a*), (*b*), (*f*), & (*j*), do not constitute adequate appellate argument. In any event, the city's duty to give notice was prescribed by statute, and does not implicate the discretionary function exception described in § 10(*b*). *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992).