Kenton-Walker, Janet, J.
The plaintiff, Nicholas J. Morana (“plaintiff’), brings this action as guardian ad litem and next friend of N.C., a minor child in the foster care of Eric L. Paquin (“Eric”) and Linda Paquin (“Linda”) (collectively, “Paquins”). The plaintiff alleges another minor child, B.W., sexually molested, assaulted, and battered N.C., and asserts claims of negligence against Eric, Linda, and B.W.’s adoptive mother, Martha K. Williams; a claim of sexual assault battery against B.W.; and a breach of contract claim against the Paquins. The Paquins now move the court to dismiss Counts I, II, and V. For the following reasons, the Paquins’ Motion to Dismiss is ALLOWED as to Count I and in part as to Count V, and DENIED as to Count II and in part as to Count V.
BACKGROUND
The facts taken from the complaint are as follows. On June 27, 2007, the Worcester Juvenile Court awarded temporary custody of N.C. to the Massachusetts Department of Children and Families (“Department”). On the same day, the Department placed her in foster care with the Paquins. On July 30, 2008, while N.C. was still in the Paquins’ foster care, Linda invited Williams and B.W. over to the Paquins’ residence and volunteered to supervise B.W. This was a common practice between the two women.
The plaintiff alleges that the Paquins knew or should have known of B.W.’s troubled childhood and diagnoses of various mental disorders, including Post-Traumatic Stress Disorder, bipolar disorder, and detachment disorder. It is alleged that Linda and Williams had previously discussed B.W.’s mental health breakdowns, which had resulted in physically aggressive behavior and a recent hospitalization for a mental health evaluation. Despite this information, the Paquins allegedly allowed B.W. to interact with N.C. without proper adult supervision on July 30, 2008. On that day, B.W. allegedly sexually molested, assaulted, and battered N.C. N.C. suffered psychological harm as a result, requiring current and future psychological treatment.
DISCUSSION
I. Standard of Review
When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. See Nader v. Citron, 372 Mass. 96, 98 (1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . . (based) on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . .” Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief. . Id., quoting Bell Atl. Corp., 550 U.S. at 557.
II. Count I: Negligence Against Eric
The plaintiff alleges Eric knew or should have known B.W. had a troubled childhood and had been diagnosed with various mental disorders. He also *196 alleges that by allowing B.W. to interact with N.C. without providing adequate supervision and by delegating his legal responsibilities to Linda, Eric acted in an “intentional, wanton and willful, and grossly negligent” manner. By using the quoted language, the plaintiff attempts to avoid the effect of the Massachusetts Torts Claim Act (“MTCA”), which exempts an “approved or licensed foster caregiver” from liability for his negligence, unless his conduct was “intentional, or wanton and willful, or grossly negligent.” G.L.c. 258, §§1, 2 (2007). The court concludes the plaintiff has failed to allege sufficient facts that Eric acted in a manner that removes him from the MTCA’s immunity.
The complaint does not assert any facts showing Eric acted intentionally or willfully. Thus, the question is whether his alleged negligence in failing to provide adequate supervision and delegating responsibilities to Linda can be considered gross negligence, thereby removing his conduct from MTCA immunity.[3] Negligence requires the plaintiff to show “(1) the existence of an act or omission in violation of a (2) duty owed to the plaintiff! ] by the defendant, (3) injury, and (4) a causal relationship between the breach of duty and the ham suffered.” See Dinsky v. Framingham, 386 Mass. 801, 804 (1982), abrogated on other grounds by Jean W. v. Commonwealth., 414 Mass. 496 (1993). Gross negligence, on the other hand, is defined as
materially more want of care than constitutes simple inadvertence ... It is very great negligence, or the absence of slight diligence, or the want of even scant care It amounts to indifference to present legal duly and to utter forgetfulness of legal obligations so far as other persons may be affected . . . Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence.
Altman v. Aronson, 231 Mass. 588, 591-92 (1919).
A parent has “a duly to provide for the care and welfare” of his child. Commonwealth v. Gallison, 383 Mass. 659, 665 (1981). A foster parent “act(s) in a parental capacity because of a temporary contractual agreement with the State,” so Eric, acting as N.C.’s foster parent, had a duty to provide for her care and welfare. Kerins v. Lima, 425 Mass. 108, 111 (1997) (holding foster parents not included in term “parents” under G.L.c. 231, §85G). Taking the facts in the complaint as true, and in the light most favorable to the plaintiff, Eric may have breached this duty and acted negligently — i.e., without “ordinary caution and prudence” — by allowing B.W. to interact with N.C. without proper supervision, given that Eric allegedly knew of B.W.’s troubled childhood and diagnoses of mental disorders. Altman, 231 Mass. at 591 (defining ordinary negligence). But Eric’s alleged breach did not constitute gross negligence because the complaint asserts mere conclusions and fails to assert factual allegations that Eric knew of B.W.’s recent aggressive behavior, for which he had lately been hospitalized for a mental health evaluation. Thus, the plaintiff does not allege Eric knew B.W. had recently exhibited behavior that could pose a threat to N.C., and he was, therefore, neither indifferent to nor forgetful of N.C.’s safety and welfare.[4] See id. (defining gross negligence); see also Dinardi v. Herook, 328 Mass. 572, 574-75 (1952) (collecting cases where gross negligence found in motorists who exhibited “protracted inattention” to road).
Because the complaint alleges, at most, negligence on the part of Eric, the MTCA immunizes Eric in his individual capacity as a public employee. See G.L.c. 258, §§1, 2. Accordingly, Count I must be dismissed for failure to state a claim upon which relief can be granted.
III. Count II: Negligence Against Linda
The plaintiff asserts Linda acted in an “intentional, wanton and willful, or grossly negligent” manner by inviting B.W. to the Paquins’ residence and allowing him “to be present and unsupervised” while interacting with N.C. Like Eric, Linda had a duty to provide for N.C.’s care and welfare. See section II, supra. Unlike Eric, however, Linda may have acted in a grossly negligent manner based on the facts as alleged. According to the complaint, Linda and Williams had previously discussed B.W.’s mental meltdowns, physically aggressive behavior, and recent hospitalization for a mental health evaluation. Linda allegedly failed to supervise B.W.’s interaction with N.C. on July 30, 2008, despite knowing about his recent unstable behavior, including physical aggression. By ignoring a known threat to N.C.’s care and welfare, Linda may have shown “indifference to present legal duty and ... utter forgetfulness of legal obligations so far as [N.C.] may be affected.” Altman, 231 Mass, at 591 (defining gross negligence).[5]
For purposes of pleading, there are sufficient allegations against Linda to show she may have been grossly negligent regarding N.C.’s care and welfare, which removes her from the MTCA’s immunity. Count II therefore survives the Paquins’ Motion to Dismiss.
IV. CountV: Breach of Contract Against the Paquins
In the complaint, the plaintiff alleges the Paquins breached a contract meant to benefit N.C. as a third-party beneficiaiy. To assert a breach of contract claim on behalf of N.C., the plaintiff must allege (1) the Paquins had a valid contract with the Department; (2) the Paquins breached the contract; (3) N.C. suffered damages as a result of the breach; and (4) N.C. was an intended third-party beneficiaiy of the contract. See Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982) (holding intended third-party beneficiaiy of contract may recover for breach of contract); Singarella v. Boston, 342 Mass. 385, 387 (1961) (listing elements of breach of contract claim). The court concludes the plaintiffs factual allegations are sufficient at the *197 pleading stage to make out a breach of contract claim, but that the claim may only be asserted against Linda.
The plaintiff alleges the Paquins entered into a contract with the Department to provide for the safety and well-being of N.C., a third-party beneficiary to the contract (“foster care contract”). He further alleges the Paquins breached the foster care contract by falling to assess and supervise third parties invited to the Paquins’ residence, resulting in harm to N.C.’s safety and well-being and in damages. These allegations make out a prima facie case of breach of a third-party beneficiary contract.
As the Supreme Judicial Court has stated, however, “a plaintiff may not avoid the requirements and limitations of the [MTCA] by designating what is essentially a personal injury claim as a contract claim.” Ayala v. Boston Hous. Auth., 404 Mass. 689, 704 (1989), superseded by statute on other grounds, St. 1993, c. 495, §145 (1993). The MTCA immunizes Eric as an individual public employee for his negligence. Thus, the plaintiff may not recast the barred negligence claim as a contract claim against Eric to avoid the MTCA. Because the court has concluded that there are sufficient facts alleged against Linda to remove her from MTCA immunity, the plaintiff can assert a breach of contract claim against Linda. See Rae, 386 Mass. at 196 (noting though plaintiff “may recover against [defendant] under either a contract or a negligence theory, or both,” double recovery not permitted). Count V therefore states a claim against Linda for breach of a contract intended to benefit a third party. As against Eric, Count V must be dismissed.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Paquins’ Motion to Dismiss be ALLOWED as to Count I and as to Count V insofar as it asserts a claim against Eric, and DENIED as to Count II and as to Count V insofar as it asserts a claim against Linda.

The MTCA’s immunity for foster caregivers is accomplished by defining a public employee as including a foster caregiver. G.L.c. 258, §1. The definition does not apply, however, if the foster caregiver’s conduct is “intentional, willful and wanton, or grossly negligent.” G.L.c. 258, §1. Therefore, if Eric’s conduct was grossly negligent, he is not a public employee, is removed from the MTCA’s protection, and may be sued as a private individual.

Further, Eric allegedly delegated his legal responsibilities to Linda, who commonly invited Williams and B.W. over to the Paquins’ residence. The complaint does not allege that B.W. engaged in any wrongful conduct during those other visits, such that Eric would have been put on notice that B.W. posed a threat to N.C.

Linda may also have owed a duty to N.C., and breached that duty, under the Restatement (Second) of Torts, which states, “One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement (Second) of Torts §319 (1965).