MASSACHUSETTS CANDY &
TOBACCO DISTRIBUTORS,
INC., et al., Plaintiffs,

v.

GOLDEN DISTRIBUTORS, LTD., d/b/a
Golden–Capital Distributors; NCC L.P.
d/b/a NCC Limited Partnership et al.,
Defendants.

Civ. A. No. 92–12913–ZRK.

United States District Court,
D. Massachusetts.

April 29, 1994.

Damian R. LaPlaca, LeBoeuf, Lamb, Leiby & MacRae, H. Glenn Alberich, Mahoney, Hawkes & Goldings, Boston, MA, for Massachusetts Candy & Tobacco Distributors, Inc., A.H. Notini & Sons, Inc., Auburn Merchandise Distributors, Inc., Geo Melhado & Co. Inc., James J. Duffy, Inc., Joseph J. Braga, Inc., Lesco Distributing Co., Inc., M. Berman & Sons, Inc., N.E. Wholesale Tobacco Co, Inc., and Taunton Tobacco, Inc.

John K. Markey, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for Golden Distributors, Ltd. d/b/a Golden–Capital Distributors.

John K. Markey, Robert S. Steinberg, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for NCC L.P. d/b/a NCC Ltd. Partnership.

Thomas O. Bean, Atty. General's Office, Boston, MA, for Mitchell Adams.

## MEMORANDUM AND ORDER REGARDING DEFENDANT NCC LIMITED PARTNERSHIP'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOCKET NO. 42)

KAROL, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiffs are several companies that sell cigarettes at wholesale within the Commonwealth of Massachusetts, as well as an incorporated trade association, Massachusetts Candy & Tobacco Distributors, Inc. ("Mass. Candy"), of which each plaintiff company is a member. Defendant NCC L.P. d/b/a NCC Limited Partnership ("NCC") is also a cigarette wholesaler and is alleged to be a member of Mass. Candy and subject to its bylaws. It is based in Georgia, but it operates a division within the Commonwealth of Massachusetts that sells cigarettes at wholesale in competition with Mass. Candy's other member companies. Also named as defendants in plaintiffs' First Amended Complaint are Mitchell Adams, as Commissioner of Revenue of the Commonwealth of Massachusetts (the "Commissioner"), and a bankrupt cigarette wholesaler by the name of Golden Distributors, Ltd., d/b/a Golden–Capital Distributors ("Golden"). Golden has discontinued all operations and has not filed an appearance. NCC acquired Golden's assets, including its trade name, out of bankruptcy and now operates its Massachusetts division under the trade name "Golden–Capital." Def. NCC Limited Partnership's Opp. to Pl.'s Req. Default at 2 (Docket # 25). Jurisdiction is based on diversity of citizenship. See 28 U.S.C.A. § 1332 (West 1993).

The plaintiff companies and NCC are all subject to the Massachusetts Cigarette Excise Law, M.G.L. ch. 64C (the "Cigarette Act"). The Cigarette Act, among other things, prohibits wholesalers from selling cigarettes at prices which are below the "cost to the wholesaler," as that term is defined in Section 13 of the Act. See Mass Gen.Laws Ann. ch. 64C, §§ 13(c), 14 (West 1988). The thrust of plaintiffs' claim is that NCC is offering various promotional incentives to retail dealers which result in lowering NCC's wholesale prices below its costs. Plaintiffs further allege that NCC's incentive programs are accomplishing their intended effect of causing plaintiffs' customers to defect to NCC. Plaintiffs seek several forms of relief, including a declaration that NCC's programs violate the Cigarette Act and constitute a breach of the contract established between plaintiffs and NCC by Mass. Candy's bylaws; an injunction to restrain NCC from continuing to offer those programs; damages under the Cigarette Act; and treble damages and attorneys' fees under M.G.L. ch. 93A ("93A").

Before the court is NCC's motion under Fed.R.Civ.P. 12(c) for judgment on the pleadings. This motion asserts that the amended complaint should be dismissed in its entirety because (1) there is no private right of action under the Cigarette Act; (2) in the absence of an independent source of substantive rights, the Massachusetts Declaratory Judgments Act, M.G.L. ch. 231A, §§ 1–9,

does not provide a basis for relief; (3) plaintiffs' claim under 93A is preempted by the Cigarette Act; and (4) plaintiff's breach of contract claim is similarly preempted. Def. NCC Limited Partnership's Mot. J. Pleadings ¶¶ 1–4 (Docket # 42).

For reasons explained more fully below, NCC's motion must be DENIED, because plaintiffs may maintain this action at least for a declaratory judgment and injunctive relief. It is unlikely that plaintiffs may sue for damages under the Cigarette Act, and open questions exist about whether they may do so under 93A or for common law breach of contract. It is, however, unnecessary to decide these questions in order to resolve NCC's present motion. Full consideration of the damages issues is therefore deferred until those issues become ripe for decision.

## II. THE CIGARETTE ACT AND RELATED LEGISLATION

The Cigarette Act was first enacted in 1945, see 1945 Mass.Acts ch. 547, § 1, and has since been amended several times. From its inception, a substantial portion of the Cigarette Act has been concerned with the establishment and administration of a system for the collection of an excise on cigarettes. For example, Sections 2 and 10 of the Cigarette Act require that all vendors be licensed; Sections 5 and 11 establish elaborate record keeping requirements; Section 6 imposes an excise on cigarettes; Sections 8, 12, 26, and 29–39 establish systems for collection and enforcement of the excise; and Section 28 provides for the disposition of revenues collected. Substantial responsibility for administration and enforcement is delegated to "the commissioner," who is defined in M.G.L. ch. 62C, §§ 1–2 to be the Commissioner of Revenue. See, e.g., Mass.Gen.Laws Ann. ch. 64C §§ 5, 6, 8, 10–12 (West 1988 & Supp.1994). Taking all these provisions into account, it is not at all surprising that the Supreme Judicial Court (the "SJC") recently characterized the Cigarette Act as "a taxation statute that describes how the Commonwealth administers its cigarette excise tax to ensure accurate collection." *Take Five Vending, Ltd. v. Town of Provincetown,* 415

Mass. 741, 744–45, 615 N.E.2d 576, 579 (1993).

The amended complaint alleges that NCC's conduct violates the so-called fair pricing provisions of the Cigarette Act, §§ 13–21 inclusive (the "Fair Pricing Provisions"). The Fair Pricing Provisions include definitions of terms such as "cost to the wholesaler" (§ 13) and a prohibition against below-cost sales of cigarettes, where such sales are made "with intent to injure competitors, destroy substantially or lessen competition" (§ 14). Violations are punishable by a fine of up to five hundred dollars. Mass.Gen. Laws Ann. ch. 64C, § 14(a) (West 1988). Section 14's prohibition against below-cost sales to some extent mirrors prohibitions set forth in § 12, which provides:

> No person shall be permitted to sell cigarettes as "loss-leaders" with intent to injure competitors or to destroy competition, and the commissioner shall enforce sections thirteen to twenty-one, inclusive, in order to prohibit such sales and stabilize and increase collections under this chapter.

Mass.Gen.Laws Ann. ch. 64C, § 12 (West 1988).

The Commissioner has promulgated regulations entitled "Fair Pricing of Cigarettes" for the purpose of "promot[ing] the effective administration of the fair pricing provisions of M.G.L. c. 64C, §§ 13 through 21...." Mass.Regs.Code tit. 830, § 64C.14.1(1) (1993). The regulations provide for the suspension or revocation of the license of any person who violates the Fair Pricing Provisions, see id. § 64C.14.1(5)–(6), and include a provision that permits persons who wish to report violations to do so, see id. § 64C.14.-1(11). The regulations, like the Cigarette Act itself, are silent on the question of whether there is a private right of action to enforce the Fair Pricing Provisions.

No discussion of the Cigarette Act or the Fair Pricing Provisions would be complete without consideration of their relationship to another law enacted seven years earlier in 1938, the Unfair Sales Act, M.G.L. ch. 93, §§ 14E–14K, 1938 Mass.Acts, ch. 410, § 1. In language that was later incorporated almost verbatim into the Cigarette Act, the Unfair Sales Act proscribes below-cost sales

by any retailer or wholesaler of "any item of merchandise," when the retailer's or wholesaler's intent is "to injure competitors or destroy competition." Mass.Gen.Laws Ann. ch. 93, § 14F (West 1984).

The Unfair Sales Act does not define "merchandise." The plain meaning of that term would seem to include cigarettes, however, and there is no reason to doubt that this is exactly what the legislature intended when it enacted the Unfair Sales Act some seven years before the Cigarette Act existed. Indeed, Section 14I of the Unfair Sales Act, as amended in 1958, confirms that the Unfair Sales Act applies to cigarettes. Section 14I provides, in relevant part: "If any provision of [the Unfair Sales Act] conflicts with the [Cigarette Act,] the provisions of [the Cigarette Act] shall prevail." Mass.Gen.Laws Ann. ch. 93, § 14I (West 1984). This provision would have been unnecessary—indeed, it would make no sense at all—if the Unfair Sales Act did not apply to cigarettes, since it is logically impossible to have a conflict between two statutes which do not both apply to the same subject matter.

Moreover, if the legislature, prospectively, did not want cigarettes to be covered by the Unfair Sales Act, it would have been simple enough for it to have clearly expressed that intent in the 1958 amendment. The legislature might, for example, have stated in the 1958 amendment that the Unfair Sales Act henceforth did not apply at all to cigarettes, or decreed that the term "merchandise" no longer included cigarettes. The Massachusetts legislature did neither. Instead, it enacted a provision that leaves no doubt, assuming there ever was any, that the Unfair Sales Act applies to cigarettes, except to the extent it actually conflicts with the Cigarette Act.[1]

This interpretation is supported not just by the plain language of the two statutes, including the 1958 amendment, but also by the timing of that amendment. Specifically, the preemption language of § 14I of the Unfair Sales Act was inserted as part of the same enactment by which the legislature, *inter alia*, modified the method for determining the cost of cigarettes for purposes of the Cigarette Act, but not the cost of other "merchandise" for purposes of the Unfair Sales Act. *See* 1958 Mass.Acts ch. 633, §§ 1, 2, 4.[2] The evident purpose of the preemption language, therefore, was to make clear that, for purposes of determining the minimum legal price at which cigarettes could be sold, the new formula for calculating cost under the Cigarette Act was to take priority over the unchanged formula for calculating cost under the Unfair Sales Act, notwithstanding that, in other respects as to which the acts remained in harmony, the Unfair Sales Act would continue to apply.

The significance of all this to the present case is twofold. First, the Unfair Sales Act in so far as it does not conflict with the Cigarette Act applies to the circumstances of this case. And, second, the express terms of the Unfair Sales Act impart a limited private right to bring suits to enjoin below-cost sales. Thus, M.G.L. ch. 93, § 14H provides, in relevant part: "Upon complaint of any person, the superior court shall have jurisdiction to restrain and enjoin any act forbidden or declared illegal by any provision of [the Unfair Sales Act]." Mass.Gen.Laws Ann. ch. 93, § 14H (West 1984). This section has been interpreted to permit any person to sue to enjoin the below-cost sale, "with intent to injure competitors or destroy competition," of "any item of merchandise." *See Davey Bros., Inc. v. Stop & Shop, Inc.,* 351 Mass. 59, 61, 217 N.E.2d 751, 753 (1966). Assum-

---

**1.** Thus, for example, and of particular interest to this case, the Unfair Sales Act applies to below-cost sales of cigarettes, because there is no conflict between any provision of the Cigarette Act and the provision of the Unfair Sales Act that bans below cost sales of *all* merchandise. The specific method which must be used for calculating the cost of cigarettes for purposes of determining whether a below-cost cigarette sale has occurred, however, is the one found in the Cigarette Act, not in the Unfair Sales Act, because, in these two respects, the two acts actually do con-

flict. *Compare* M.G.L. ch. 64C, § 13 (Cigarette Act definitions of cost and sale terms) *with* M.G.L. ch. 93, § 14E (Unfair Sales Act definitions of cost and sale terms).

**2.** Section 4 of the 1958 Amendment modified section 14I of the Unfair Sales Act to incorporate its current preemption language, while Sections 1 and 2 of the amendment altered certain definitions in Section 13 of the Cigarette Act.

ing there is no conflict between the Cigarette Act and Section 14H of the Unfair Sales Act, it is this provision of the Unfair Sales Act, and not any express or implied provision in the Cigarette Act itself, that enables plaintiffs here to maintain their suit for injunctive relief.

## III. ANALYSIS OF NCC'S MOTION

### A. Standards Applicable to Motions Under Fed.R.Civ.P. 12(c)

█ Fed.R.Civ.P. 12(h)(2) provides that, after the close of the pleadings, the defense of failure to state a claim upon which relief can be granted may, as has been done here, be raised in a motion for judgment on the pleadings pursuant to Rule 12(c). When a Rule 12(c) motion raises a Rule 12(b)(6) defense, the motion should be evaluated under the familiar standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987); *cf. Whiting v. Maiolini*, 921 F.2d 5, 6 (1st Cir.1990) (district court was within it discretion in converting movant's Rule 12(c) motion for judgment on the pleadings to a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* §§ 1367, 1369 (2d ed. 1990 & Supp.1993).

█ The trial court may dismiss a complaint under Rule 12(b)(6) only if no relief can be granted based on any set of facts that could be proved consistent with plaintiff's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In considering the motion, the court must treat all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff. *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.

1992); *Rumford Pharmacy v. City of East Providence*, 970 F.2d 996, 997 (1st Cir.1992). As applied to this case, this standard requires that NCC's motion be denied if plaintiffs are entitled to any form of relief under any law, assuming they can prove their allegations.

### B. Plaintiffs' Right to Sue for Declaratory and Injunctive Relief

█ As noted, Section 14H of the Unfair Sales Act provides a private right of action to enjoin below-cost sales of any item of merchandise. That private right of action is available to plaintiffs, unless it conflicts with any provision of the Cigarette Act. Clearly no express conflict exists, since no language in any section of the Cigarette Act explicitly precludes a private right of action.

█ Nor is there any implied conflict. The Cigarette Act indisputably has two primary purposes. First, it "is substantively a taxation statute that describes how the Commonwealth administers its cigarette excise tax to ensure accurate collection." *Take Five Vending*, 415 Mass. at 744–45, 615 N.E.2d at 579.[3] Second, the Cigarette Act is a fair pricing statute that echoes the prohibition in the Unfair Sales Act against below-cost pricing. *See* Mass.Gen.Laws Ann. ch. 64C, §§ 12, 14(a) (West 1988).

Insofar as the Cigarette Act is a taxation statute, there is no implied conflict between Section 12, which directs the Commissioner to enforce the Fair Pricing Provisions in order to prohibit "loss-leader" sales, and Section 14H of the Unfair Sales Act, which allows private persons to do so. If the two statutes have any relationship, they are properly viewed as complementary. As the SJC said in *Take Five Vending*, in response to an argument that a local by-law which banned *all* cigarette vending machines conflicted with a provision of the Cigarette Act that merely prohibited the vending-machine sale

---

**3.** The SJC went on to say, in dictum, that the Cigarette Act is "exclusively a taxing statute." *Take Five Vending*, 415 Mass. at 745, 615 N.E.2d at 580. The SJC did not, however, have the Fair Pricing Provisions of the Cigarette Act under consideration in *Take Five Vending*. Hence, care should be taken not to place too much emphasis on that statement given the statutory sections at

issue here. Nevertheless, to the extent the Cigarette Act is a taxing statute, there is no reason to believe that private enforcement of its ban on below-cost sales would in any way interfere with the Commissioner's administrative or enforcement responsibilities under the Cigarette Act. *See infra* p. 67.

of cigarettes to minors, "[t]he by-law does not detract from, but rather augments, [the Cigarette Act's more limited ban]." *Take Five Vending*, 415 Mass. at 746, 615 N.E.2d at 580.[4]

On the other hand, insofar as the Cigarette Act is a fair pricing statute that is intended to protect competitors and competition against the perceived evils of below-cost pricing of cigarettes, there is even less basis to imply a conflict between the Cigarette Act and the concept of private enforcement. Indeed, since the Commissioner is most directly concerned with the overall collection of taxes and less so, if at all, with the fortunes of any individual competitor, it makes perfect sense to permit private parties, in the interest of self-preservation, to bring suit to enforce the Cigarette Act's prohibition against "loss-leader" sales.[5] In the absence of any conflict between the two statutes, plaintiffs may maintain this suit to enjoin NCC's allegedly illegal incentive programs.

From what has been said thus far, it is also clear that plaintiffs may maintain their suit for declaratory judgment. Both the Unfair Sales Act and the Cigarette Act confer substantive rights on plaintiffs, and both the federal and the state declaratory judgment statutes permit plaintiffs to bring suit to have their rights declared. *See* 28 U.S.C.A. §§ 2201–02 (West 1982 & Supp.1994); Mass. Gen.Laws Ann. ch. 231A (West 1986). In fact, even without consideration of the significance of the private right of action conferred under Section 14H of the Unfair Sales Act, the SJC has permitted private parties to maintain declaratory judgment actions to determine the legality under the Cigarette Act of their competitors' pricing activities. *See, e.g., Harvey Payne, Inc. v. Slate Co.*, 345 Mass. 488, 188 N.E.2d 562 (1963); *Harvey Payne, Inc. v. Slate Co.*, 342 Mass. 368, 173

N.E.2d 285 (1961) ("Payne I"). The only requirement is that all interested persons, particularly the Commissioner, be included as parties, *Payne I*, 342 Mass. at 370, 173 N.E.2d at 286, as has been done here.

The court is mindful of the Commissioner's position that no one except the Commissioner may bring suit under the Cigarette Act and of NCC's claim that the Commissioner's views are entitled to great deference. For the following reasons, the court rejects these views.

1. For all the reasons already given, even if the Commissioner's views are entitled to some deference, the far better view is that a private right of action does exist.

■ 2. The question of whether private parties may sue to enforce substantive rights and duties established in a regulatory statute is a pure question of law, as to which the views of the regulatory agency charged with enforcement are entitled to deference, but are not controlling. *Cf. Board of Educ. v. School Committee of Quincy*, 415 Mass. 240, 243–44, 612 N.E.2d 666, 669 (1993) (reasonable and consistent interpretations of statutes by agencies charged with their implementation are entitled to deference ... [but] deference does not mean abdication ...[;] the duty of statutory interpretation is for the courts"); *Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Authority*, 464 U.S. 89, 98 n. 8, 104 S.Ct. 439, 444–45 n. 8, 78 L.Ed.2d 195 (1983) ("When an agency's decision is premised on its understanding of a specific congressional intent ... it engages in the quintessential judicial function of deciding what a statute means. In that case, the agency's interpretation may be influential, but it cannot bind a court").

3. The private right of action that exists here is not implied; it is express, and it is

---

**4.** The SJC in *Take Five Vending* also rejected an argument that the local ban interfered with the tax collection scheme embodied in the Cigarette Act, stating: "As the by-law at issue has nothing to do with the taxation aspects of cigarette sales, it does not conflict with the statute." *Take Five Vending*, 415 Mass. at 745, 615 N.E.2d at 580. By analogy, the private right of action conferred by Section 14H of the Unfair Sales Act is for the protection of competitors and competition and "has nothing to do with the taxation aspects of

cigarette sales." Thus, "it does not conflict with the [Cigarette Act]."

**5.** Although health considerations play no part in the court's decision, it is worth noting that private enforcement of the ban on "loss-leader" sales of cigarettes might have public health benefits, in that it could conceivably cause some decline in the overall sale and consumption of cigarettes.

found in the Unfair Sales Act, a statute with respect to which the Commissioner has no responsibility whatsoever. Indeed, it is even doubtful that the Commissioner has or could properly have a position on whether a private right of action exists under the Unfair Sales Act.

4. The SJC has already rejected the view of the State Tax Commission, the agency previously charged with responsibility for enforcement of the Cigarette Act, that the remedies expressly provided by the Cigarette Act exclude all others, including, in particular, the right of private parties to sue for declaratory relief. *See Massachusetts Ass'n of Tobacco Distribs. v. State Tax Comm'n,* 354 Mass. 85, 87–88, 235 N.E.2d 557, 559 (1968).

For all the reasons stated, this suit may be maintained, at least to the extent it seeks injunctive and declaratory relief. NCC's motion must therefore be DENIED.

## C. Plaintiffs' Right to Sue for Damages and Multiple Damages

Because plaintiffs may at least maintain this action for declaratory and injunctive relief, it is unnecessary to decide now whether plaintiffs may seek to recover damages for NCC's alleged sale of cigarettes at prices below cost. Nonetheless, the parties, to some extent, have already briefed the damages issues, and they may find it to be of assistance, either for settlement or for future briefing purposes, to know some of the court's preliminary thoughts on the subject.

It is unlikely that there is an express or implied statutory right to recover damages under the Unfair Sales Act or the Cigarette Act. Both acts are penal, in that they carry fines (and, in the case of the Unfair Sales Act, the possibility of a jail term) for their violation. *Cf. Johnson v. United States Steel Corp.,* 348 Mass. 168, 169, 202 N.E.2d 816, 817 (1964) (where violator of statute is subject to a fine, statute is clearly penal). Massachusetts courts have consistently denied the existence of a private, statutory remedy for violation of a penal statute unless the private remedy "appears by express terms or by clear implication to have been the legislative intent." *Johnson,* 348 Mass. at 169–170,

202 N.E.2d at 817 (1964); *accord Mezullo v. Maletz,* 331 Mass. 233, 238, 118 N.E.2d 356, 359 (1954); *Wynn v. Sullivan,* 294 Mass. 562, 566, 3 N.E.2d 236, 238 (1936). In *Mezullo,* for example, the court considered a statute which provided: "Whoever wilfully conspires with a person unlawfully or improperly to commit to an institution for the insane a person who is not insane or wilfully assists in or connives at such a commitment shall be punished by fine or imprisonment, at the discretion of the court." The court nevertheless held that the statute created no new cause of action in favor of a person who had been wrongfully committed to an insane asylum, because such right did not appear by the express terms of the statute or its clear implication. *Mezullo,* 331 Mass. at 238, 118 N.E.2d at 359.

Of great significance to the present analysis, the SJC in *Johnson, Mezullo,* and *Wynn* was clearly attempting to draw a bright line between cases, such as the one under consideration, in which a plaintiff is claiming that a penal statute has created a new cause of action and cases in which a plaintiff is claiming that violation of a penal statute satisfies or is evidence of one element of a traditional common law cause of action, such as negligence. In *Mezullo,* for example, the SJC stated: "In general it may be said that penal statutes have been construed as creating a new cause of action *independently of the common law* if, and only if, that appears by express terms or by clear implication to have been the legislative intent." *Mezullo,* 331 Mass. at 238, 118 N.E.2d at 359 (emphasis added); *accord Wynn,* 294 Mass. at 566, 3 N.E.2d at 238 ("in this commonwealth, contrary to the rule prevailing in many jurisdictions, violation of a criminal statute ... does not ordinarily in and of itself *independently of common law duties* give rise to a civil cause of action") (emphasis added). The point was driven home once again in *Johnson,* where the court was careful to distinguish *Berdos v. Tremont & Suffolk Mills,* 209 Mass. 489, 95 N.E. 876 (1911), an early case in which violation of a penal statute did not give rise to a new cause of action but was held to be evidence of the defendant's breach of the standard of care it owed to a plaintiff

**70**

who was suing for common law negligence. Thus, the *Johnson* court stated: "Although there is language in *Berdos* ... which may seem somewhat at variance with the [above principal], the actual holding in that case is in harmony with [it], for all that the *Berdos* case decided was that the violation of the penal statute involved was evidence of negligence." *Johnson*, 348 Mass. at 170 n. 1, 202 N.E.2d at 818 n. 1.

The teaching of these cases seems clear: in Massachusetts, the jurisdiction whose law provides the rule of decision, *see Dahl v. ConAgra*, 998 F.2d 619, 621 (8th Cir.1993) (state, not federal, law determines whether there is a private right of action under a state statute), the principles of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), do not generally apply to the determination of whether a previously unrecognized private civil remedy exists to redress the violation of a penal statute.[6] Instead, the court must find such remedy, if at all, only in the express terms of the penal statute or by its clear implication.

Applying this standard, it is unlikely that plaintiffs may sue for damages for defendant's alleged violation of either the Unfair Sales Act or the Cigarette Act. Certainly, there is no express right of action to sue for damages. Nor can it be said that such right arises by clear implication of either statute. In fact, the clearest implication is that there is no such right. The Unfair Sales Act expressly provides for the right to sue for injunctive relief only, and, for reasons stated, that right may be invoked by cigarette wholesalers to enforce the ban against below-cost pricing of cigarettes. Where a statute expressly provides for a private right of action that does not include a damages remedy,

it is difficult to draw any conclusion other than that the limited remedy provided by the legislature is the only one it intended to create. Thus, it is unlikely that plaintiffs will be permitted to sue for damages under either the Unfair Sales Act or the Cigarette Act.

The availability of a damages remedy under 93A raises two different issues, neither of which was extensively briefed. The first issue is whether, as a matter of substantive law, below-cost pricing is an "unfair method[ ] of competition" or an "unfair ... act[ ] or practice[ ]" within the meaning of Section 2(a) of 93A. Since both parties chose to defer consideration of this first issue, the court will do likewise and move immediately to the second.

The second issue is whether the damage remedies of 93A are preempted by the express right of action found in the Unfair Sales Act. Neither party addressed this specific issue either. Instead, plaintiffs and NCC both addressed the analytically distinct question whether 93A is preempted by any implied right of action that might be found in the Cigarette Act.[7] Because the question of whether the express but limited right of action found in the Unfair Sales Act preempts 93A was not briefed and need not be answered in order to decide NCC's pending motion, the court will say very little about this issue, other than that the case seems to fall somewhere between *Dodd v. Commercial Union Insurance Co.*, 373 Mass. 72, 365 N.E.2d 802 (1977) and *Reiter Oldsmobile Inc. v. General Motors Corp.*, 378 Mass. 707, 393 N.E.2d 376 (1979). Thus, in *Dodd*, the court held that M.G.L. ch. 176D did not preempt 93A, based in part on the complete absence of any private remedy in M.G.L. ch. 176D and in part on the express language of

6. Neither *Ludlow Education Ass'n v. Town of Ludlow*, 31 Mass.App.Ct. 110, 575 N.E.2d 359 (1991), nor *Gabriel v. Borowy*, 324 Mass. 231, 85 N.E.2d 435 (1949), is to the contrary, since neither case involved a penal statute. *Dinsky v. Town of Framingham*, 386 Mass. 801, 438 N.E.2d 51 (1982), which held that a homeowner could not recover for a town's negligent failure to enforce its building code, is also consistent with this analysis. The issue there was not whether the town's enactment of a building code created a new cause of action unrecognized at common law, but whether it created a duty of

care in favor of homeowners which would satisfy one of the long standing elements of a traditional, common law cause of action for negligence.

7. The Commissioner took no position regarding the applicability of 93A to NCC's alleged conduct, presumably because the Commissioner has no role in the enforcement of 93A. This is consistent with the doubt expressed earlier by the court that the Commissioner has or could properly have a position regarding the availability to plaintiffs of a private right of action under the Unfair Sales Act.

M.G.L. ch. 176D, § 8, which seemed to preserve the applicability of all other laws. *Dodd,* 373 Mass. at 77–78, 365 N.E.2d at 805. Neither condition is present here. On the other hand, in *Reiter,* the court held that M.G.L. ch. 93B did preempt 93A, based in part on the fact that M.G.L. ch. 93B was enacted after 93A and in part on the fact that its provisions regarding private remedies incorporated by specific reference the damage remedies found in 93A but not the equitable remedies. *Reiter,* 378 Mass. at 711, 393 N.E.2d at 378. Again, neither condition is present here. Thus, the court considers the preemption issue to be an open question under controlling Massachusetts law.[8]

### IV. CONCLUSION

For reasons stated herein, NCC's motion for judgment on the pleadings is DENIED. It is further ORDERED that the stay of discovery is hereby lifted and that the parties, on or before May 14, 1994, shall propose, jointly if possibly but separately if necessary, a schedule which includes a deadline for the completion of discovery and the filing of dispositive motions and a date for a final pretrial conference and the commencement of trial by the end of 1994.

---

**8.** The court has not considered plaintiffs' claim for common law breach of contract for two reasons. First, neither party addressed this claim in its memorandum. And, second, it is unnecessary to reach this claim in deciding the motion under consideration.